OPINION OF THE COURT
 

 Levine, J.
 

 A school bus being operated in reverse by a coemployee struck and severely injured plaintiff Concetta Scarangella, a school bus driver for third-party defendant Huntington Coach Corp., Inc. The accident occurred in Huntington’s bus parking yard on September 26, 1988. The vehicle was one of 10 new school buses that defendant Thomas Built Buses, Inc., sold Huntington in 1988. At that time, Thomas offered buyers as an optional safety feature a back-up alarm that would automatically sound when a driver shifted the bus into reverse gear, but Huntington chose not to purchase this optional equipment.
 

 After plaintiff and her husband commenced this action for negligence, breach of warranty and products liability, Thomas made a motion to preclude plaintiff from submitting to the jury her claim that the lack of a back-up alarm was a design defect. In support of its motion, Thomas submitted a memorandum of
 
 *658
 
 law and excerpts from the deposition of Huntington’s president and chief operating officer, Kevin Clifford.
 

 According to Clifford’s deposition testimony, Huntington owned and operated 190 school buses and had 300 employees. Clifford had worked for the company for over 30 years and had been a president of the New York State School Bus Owners Association. Clifford explained that he was aware that the back-up alarms were available but made a considered decision not to purchase them. He opted against the alarm because “it screams” when a bus is put in reverse gear, and he intended to park the buses at a bus yard in the middle of a residential neighborhood where his company had been experiencing problems with neighbors concerning noise pollution. When the buses were being parked in the bus yard, there “had to be a tremendous amount of backing up,” and Clifford believed it was unnecessary to equip all 100 buses in the lot with the “screaming” alarms. Instead, Clifford instructed the drivers to be cautious and to use the bus’s ordinary horn before backing up.
 

 In response to Thomas’s motion, plaintiff proffered no specific evidence. She based her design defect claim entirely on the proposition that, because a school bus driver always has a substantial blind spot when operating the vehicle in reverse, a school bus must invariably be equipped with an automatically engaged back-up alarm. Supreme Court concluded that there was no triable issue of fact on this design defect claim. It thus granted defendant’s motion to preclude plaintiff from presenting any evidence on the issue to the jury.
 

 Plaintiff proceeded to trial on the theory that the bus was defectively designed because it did not have proper mirrors. At the conclusion of plaintiff’s case, the Trial Judge directed a verdict for defendant and dismissed the complaint. The Appellate Division affirmed (250 AD2d 664).
 

 Plaintiff did not object to the motion to preclude evidence regarding this design defect claim on the procedural ground that it was being used improperly to obtain a final disposition of the merits of the claim, much like a motion for partial summary judgment. Instead, the response was to address the merits of her design defect claim. Therefore, the propriety of this procedural tactic to effect the result gained in this case is not before us. Thus, the only issue before us is whether, based upon the submissions on the motion to preclude, plaintiff was properly barred from presenting to a jury her claim that the
 
 *659
 
 bus was defectively designed by Thomas because it did not incorporate the back-up alarm as standard equipment. Because we conclude that in the procedural context framed by the parties the preclusion was not erroneous as a matter of law, we affirm.
 

 A defectively designed product “ ‘is one which, at the time it leaves the seller’s hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce’”
 
 (Voss v Black & Decker Mfg. Co.,
 
 59 NY2d 102, 107). A manufacturer can be held liable for selling a defectively designed product because the manufacturer “is in the superior position to discover any design defects and alter the design before making the product available to the public”
 
 (id.,
 
 at 107).
 

 In
 
 Voss,
 
 we identified seven nonexclusive factors to be considered in balancing the risks created by the product’s design against its utility and cost
 
 (id.,
 
 at 109). As relevant here, these include the likelihood that the product will cause injury, the ability of the plaintiff to have avoided injury, the degree of awareness of the product’s dangers which reasonably can be attributed to the plaintiff, the usefulness of the product to the consumer as designed as compared to a safer design and the functional and monetary cost of using the alternative design
 
 (id.).
 
 An additional pertinent factor that may be taken into account is “the likely effects of [liability for failure to adopt] the alternative design on * * * the range of consumer choice among products” (Restatement [Third] of Products Liability § 2, comment
 
 f).
 
 Where a court, after considering the relevant facts and risk-utility factors, determines that the plaintiff has failed to make out a prima facie case of a design defect, the claim should not be submitted to the jury
 
 (see, Fallon v Hannay & Son,
 
 153 AD2d 95, 99; 1A NY PJI3d 587).
 

 Biss v Tenneco, Inc.
 
 (64 AD2d 204,
 
 lv denied
 
 46 NY2d 711) and
 
 Rainbow v Elia Bldg. Co.
 
 (79 AD2d 287,
 
 affd for reasons stated below
 
 56 NY2d 550) applied New York’s design defect jurisprudence to fact patterns in which the buyer of a product elected not to purchase an optional safety device to accompany it.
 
 Biss
 
 held that a manufacturer of a loader vehicle could not be found liable for negligent design where an employee of the purchaser was injured due to the absence of an optional rollover protection structure the purchaser chose not to have included when the vehicle was acquired. The opinion reasoned that
 

 
 *660
 
 “defendants had fulfilled their duty to exercise reasonable skill and care in designing the product as a matter of law when they advised the purchaser that an appropriate safety structure * * * was available. * * * If knowledge of available safety options is brought home to the purchaser, the duty to exercise reasonable care in selecting those appropriate to the intended use rests upon him. He is the party in the best position
 
 to exercise an intelligent judgment to make the trade-off between cost and function,
 
 and it is he who should bear the responsibility if the decision on optional safety equipment presents an unreasonable risk to users”
 
 (Biss v Tenneco, Inc., supra,
 
 at 207 [emphasis supplied]).
 

 In
 
 Rainbow,
 
 plaintiff claimed that a motorcycle without an optional safety feature, side crash bars, was unreasonably dangerous. The plaintiff was “an
 
 experienced motorcyclist
 
 [who] * * * had been a
 
 successful motorcycle racer
 
 for many years [and] * * * had removed crash bars mounted on a previously owned motorcycle”
 
 (Rainbow v Elia Bldg. Co., supra,
 
 79 AD2d, at 291 [emphasis supplied]). The Court dismissed plaintiff’s complaint, holding that the buyer “was in the best position to exercise an intelligent judgment in making the trade-off between cost and function and thus to decide whether crash bars were reasonably necessary on his motorcycle for his purposes”
 
 (id.).
 

 In contrast, in
 
 Rosado v Proctor & Schwartz
 
 (66 NY2d 21), a manufacturer who sold a textile machine with completely exposed massive gears, chains and pulleys, with no safety disconnect switches, could not escape responsibility for a user’s injury by inserting boilerplate language in its sales contract that required the buyer to install any necessary safety devices. In contrast to the instant case, the manufacturer there did not give the buyer the choice of a machine that was already equipped with the safety equipment. We held that
 

 “where, as here,
 
 the manufacturer is in the best position to know the dangers inherent in its product,
 
 and the
 
 dangers do not vary depending on jobsite,
 
 it is also in the best position to determine what safety devices should be employed * * *. To allow a manufacturer * * * which sells a product * * * with no safety devices, to shift the ultimate duty of
 
 *661
 
 care to others through boilerplate language in a sales contract, would erode the economic incentive manufacturers have to maintain safety and give sanction to the marketing of dangerous, stripped down, machines”
 
 (id.,
 
 at 26-27 [emphasis supplied]).
 

 We can thus distill some governing principles for cases where a plaintiff claims that a product without an optional safety feature is defectively designed because the equipment was not standard. The product is not defective where the evidence and reasonable inferences therefrom show that: (1) the buyer is thoroughly knowledgeable regarding the product and its use and is actually aware that the safety feature is available; (2) there exist normal circumstances of use in which the product is not unreasonably dangerous without the optional equipment; and (3) the buyer is in a position, given the range of uses of the product, to balance the benefits and the risks of not having the safety device in the specifically contemplated circumstances of
 
 the buyer’s
 
 use of the product. In such a case, the buyer, not the manufacturer, is in the superior position to make the risk-utility assessment, and a well-considered decision by the buyer to dispense with the optional safety equipment will excuse the manufacturer from liability. When the factors are not present, there is no justification for departure from the accepted rationale imposing strict liability upon the manufacturer because it “is in the superior position to discover any design defects”
 
 (Voss v Black & Decker Mfg. Co., supra,
 
 at 107).
 

 Applying the foregoing principles, plaintiff failed to make a prima facie showing that the lack of a back-up alarm on the bus that injured her was a design defect. First, Huntington was a highly knowledgeable consumer. Huntington and its management had owned and operated school buses serving a number of school districts for decades and certainly were aware that a bus driver had a blind spot when a bus was operated in reverse. It is also undisputed that when it purchased the bus, Huntington knew that the back-up alarm was available. The product was in the exact condition contemplated and selected by Huntington at the time of purchase.
 

 Second, the uncontradicted evidence showed that, in the actual circumstances of the operation of the buses in reverse by Huntington, the risk of harm from the absence of a back-up alarm was not substantial. In his pretrial deposition, Huntington’s president indicated that the only significant incidence of operating buses in reverse was in positioning buses in and backing them out of the yard. Plaintiff submitted no evidence
 
 *662
 
 regarding Huntington buses backing up under any other circumstances, e.g., while transporting children to and from school or outside the parking yard. Indeed, at the trial plaintiff herself testified that, because of the blind spot, Huntington drivers were instructed as part of their training not to operate buses in reverse except in the yard. Drivers were also instructed to exercise caution and sound their regular horns when backing up.
 

 Thus, the individuals at risk from the absence of back-up alarm equipment on Huntington buses were almost exclusively its drivers and other employees at its parking yard. It was readily inferrable from the only evidence submitted on the motion that these persons at risk, including plaintiff, were fully aware of a bus driver’s blind spot in backing up a bus and the resultant hazard, and could be expected to exercise special care whenever positioned in proximity to the rear of any bus that was idling or moving in reverse in the yard. Again, plaintiff made no factual showing to the contrary that school children, other pedestrians or occupants of other vehicles were exposed to any hazards of the operation of Huntington buses in reverse, without back-up alarms.
 

 Third, Huntington was in a position to balance the benefits and the dangers of not having the safety device, given the contemplated use of the bus. After weighing the risks against the costs, Huntington made a considered decision not to buy the back-up alarm. Only Huntington knew how it would instruct and train its drivers and when and how the buses would be operated in reverse. Huntington and not Thomas was in a position to assess the efficacy of alternative safety measures in its operational rules and training of drivers. The buyer had the ability to understand and weigh the significance of costs associated with noise pollution and neighborhood relations, given the particular suburban location of the parking lot, against the anticipated, foreseeable risks of operating buses in a parking lot without a back-up alarm device or safeguard.
 

 As shown above, plaintiff was confronted with proof that brought this case within the
 
 Biss-Rainbow
 
 three-factor analysis of the sophisticated consumer’s knowledge of the safety feature, the existence of reasonably safe circumstances of normal use and the superior vantage point of the buyer in risk-utility balancing with respect to its own individualized use of the product. Plaintiff failed to submit, in opposition to the preclusion motion, any proof negating any of these three fac
 
 *663
 
 tors.
 
 [1]
 
 Indeed, she failed to make out a prima facie case with evidence regarding other relevant considerations generally applicable in design defect cases, e.g., the ability of the plaintiff to have avoided injury, the plaintiff’s degree of awareness of the potential danger, the cost of the back-up alarm or the effect of liability on the range of consumer choice
 
 [2]
 

 (see, Voss v Black & Decker Mfg. Co., supra,
 
 at 109;
 
 Rainbow v Elia Bldg. Co., supra,
 
 79 AD2d, at 291; Restatement [Third] of Products Liability § 2, comment
 
 f,
 
 illustrations 9, 10). Thus, plaintiff created no triable issues for the jury in connection with her claim that the absence of a back-up alarm was a design defect, and preclusion was warranted here.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Had this accident occurred out of the bus parking yard, or had plaintiff (herself one of Huntington’s drivers) submitted evidence of some incidence of buses backing up outside the yard, at least a triable issue might have been created as to whether there was an actual separate and distinct normal use of the buses without back-up alarms which was reasonably safe.
 

 [2]
 

 . Because plaintiff’s accident occurred in 1988, plaintiff could not benefit from a statutory provision providing that “[e]very school bus manufactured for use in [New York] * * * after April first, nineteen hundred ninety, shall be equipped with back-up beepers” (Vehicle and Traffic Law § 375 [21-g]).