■ Nicolo Giunta et al., Appellants, v Delta International Machinery, Respondent. [751 NYS2d 512] —In an action to recover damages for personal injuries, etc., the plaintiffs appeal from (1) a decision of the Supreme Court, Kings County (Schneier, J.), dated July 10, 2001, and (2) a judgment of the same court, dated August 24, 2001, which, upon the granting

of the defendant's application to set aside a jury verdict finding the defendant 60% at fault in the happening of the accident and the plaintiff 40% at fault in the happening of the accident, and for judgment as a matter of law, is in favor of the defendant and against them, dismissing the complaint.

Ordered that the appeal from the decision is dismissed, as no appeal lies from a decision (see *Schicchi v Green Constr. Corp.*, 100 AD2d 509); and it is further,

Ordered that the judgment is reversed, on the law and as a matter of discretion, the defendant's application for judgment as a matter of law is denied, the complaint is reinstated, and a new trial is granted, with costs to abide the event.

The plaintiff Nicolo Giunta (hereinafter the injured plaintiff) was injured while using a table saw manufactured by the defendant in 1988. The blade guard on the table saw was removable to permit the user to perform certain cuts which would have been hampered by the blade guard, such as non-through and angle cuts. At the time of the accident, the injured plaintiff was performing a through cut which would not have been hampered by use of the removable blade guard. The injured plaintiff claimed that he asked his supervisor for the blade guard, but was told to work without it.

The plaintiffs' expert testified that the table saw should have been designed with an interlock which would have prevented the motor from starting if the blade guard was off. This theory of liability was explicitly rejected as a matter of law in *David v Makita, U.S.A.* (233 AD2d 145), and implicitly rejected in *Banks v Makita, U.S.A.* (226 AD2d 659). The plaintiffs' expert also suggested, as an alternative design, a nonremovable blade guard which the user could swing out of the way when making cuts hampered by the blade guard, known as an over-the-arm blade guard. The evidence indicated that the over-the-arm design was available since the 1960's, although the defendant did not introduce this design for its table saws until the early 1990's.

The evidence at trial established that each design has its limitations. Both designs permit the saw to be operated without the use of a blade guard, since certain types of cuts cannot be performed with a blade guard. The advantage of the over-the-arm blade guard is that it is attached to the machine and always available, should the user choose to use it. There is a factual dispute in the record as to whether the over-the-arm blade guard could have been used to make the cut that the injured plaintiff was making at the time of the accident.

The jury was instructed with respect to negligence, and

returned a general verdict finding that the defendant's negligence was a proximate cause of the accident, apportioning 60% of the fault in the happening of the accident to the defendant and 40% to the plaintiff. The trial court granted the defendant's application to set aside the jury verdict and granted the defendant judgment as a matter of law, relying on the decision of this Court in *Banks v Makita, U.S.A. (supra)*.

The instant case is distinguishable from *Banks v Makita, U.S.A. (supra)*. The plaintiffs in this case submitted evidence that an alternative design was available at the time the saw was manufactured in the form of an over-the-arm blade guard. Recent cases have held that, on a motion for summary judgment, such evidence presents an issue of fact (*see Ganter v Makita, U.S.A.*, 291 AD2d 847; *Sanchez v Otto Martin Maschinenbau GmbH & Co.*, 281 AD2d 284, 285; *Arbaiza v Delta Intl. Mach. Co.*, 1998 WL 846773, 1998 US Dist LEXIS 17886 [ED NY, Oct. 5, 1998]). Therefore, the defendant was not entitled to judgment as a matter of law.

However, certain trial errors justify the granting of the defendant's motion to set aside the jury verdict and warrant a new trial.

The plaintiffs contend that the trial court erred in refusing to instruct the jury with respect to strict products liability based upon a design defect. Both the plaintiffs and the defendant requested the instruction with respect to strict products liability set forth in PJI3d 2:141 (2002). The trial court stated that each counsel had a "specific" objection to any deviation from their written requests to charge. Therefore, the question of whether the failure to give this instruction was error is preserved for appellate review.

The gravamen of the plaintiffs' cause of action is an alleged design defect. To prevail on a cause of action sounding in negligent design, a plaintiff must prove that the manufacturer failed to exercise reasonable care in designing the product. To prevail on a cause of action sounding in strict products liability, a plaintiff must prove that the product contained an unreasonably dangerous design defect (*see Lancaster Silo & Block Co. v Northern Propane Gas Co.*, 75 AD2d 55, 62). New York courts have deemed these concepts " 'functionally synonymous' " with respect to the manufacturer of the product (*Denny v Ford Motor Co.*, 87 NY2d 248, 258, quoting Schwartz, *New Products, Old Products, Evolving Law, Retroactive Law*, 58 NYU L Rev 796, 803; *see Sucher v Kutscher's Country Club*, 113 AD2d 928, 931). Since the defendant was the manufacturer of the saw, in theory, negligence should not be more difficult to prove than strict products liability.

However, the requested instruction with respect to strict products liability (*see* PJI3d 2:141 [2002]) sets forth a balancing test for alternative designs which is particularly applicable in this case, to wit, that the jury was required to balance "the risks involved in using the product against: 1. the product's usefulness and its costs, and against: 2. the risks, usefulness and costs of the alternative designs" (*id.*).

The Court of Appeals has held that when the gravamen of the plaintiff's cause of action is a design defect, certain "risk-utility factors" must be considered (*Scarangella v Thomas Built Buses,* 93 NY2d 655, 659). The factors include the likelihood that the product will cause injury, the ability of the plaintiff to have avoided injury, the plaintiff's awareness of the product's dangers, the usefulness of the product as designed as compared to a safer design, the functional and monetary cost of using the alternative design, and the likely effect of liability for failure to adopt the alternative design on the range of consumer choice among products (*see Scarangella v Thomas Built Buses, supra* at 659). "These risk-utility factors are to be considered in the first instance by the court to determine whether a plaintiff has made out a prima facie case and, if so, then submitted in some reasonably simple fashion to the jury" (*Fallon v Hannay & Son,* 153 AD2d 95, 99). The risk-utility factors apply to causes of action sounding in negligent design as well as strict products liability based upon a design defect (*see Denny v Ford Motor Co., supra* at 258; *Jackson v Bomag GmbH,* 225 AD2d 879). In the instant case, the jury was not asked to consider these risk-utility factors in any fashion.

In further support of their contention that the instructions to the jury were erroneous, the plaintiffs rely on *Harvey v Suds N' Fluff Laundromat* (194 AD2d 644). In that case, this Court held that the trial court should have required the jury "by special verdict, to make a specific determination as to each theory of liability alleged in the complaint" (*Harvey v Suds N' Fluff Laundromat, supra* at 645).

Similarly, in the instant case, the jury was instructed to render a general verdict. The general verdict could have been based upon the testimony of the plaintiffs' expert that the saw should have been equipped with an interlock device. As previously noted, that theory was insufficient as a matter of law. Accordingly, directing the jury to render a general verdict constituted additional error warranting a new trial (*see Quigley v County of Suffolk,* 75 AD2d 888, 889). Smith, J.P., Goldstein, McGinity and Mastro, JJ., concur.