■ RAY CORDANI, Respondent, v THOMPSON & JOHNSON EQUIPMENT COMPANY, INC., et al., Defendants and Third-Party Plaintiffs-Appellants-Respondents. DECRESCENTE DISTRIBUTING COMPANY, Third-Party Defendant-Respondent-Appellant. [792 NYS2d 675]—

Carpinello, J. Cross appeals from an order of the Supreme Court (Nolan, Jr., J.), entered March 12, 2004 in Saratoga County, which, inter alia, denied defendants' motions for summary judgment dismissing the complaint.

The instant action sounding in negligence and strict products liability stems from a July 1998 accident wherein plaintiff was struck by a forklift being operated in reverse by a coworker during their employment with third-party defendant, DeCrescente Distributing Company. The subject forklift was manufactured by defendant Clark Equipment Company and leased to DeCrescente by defendant Thompson & Johnson Equipment Company, Inc. Indeed, in 1995, after testing various makes and models of forklifts from other companies, DeCrescente decided to lease seven Clark forklifts from Thompson, including the one that injured plaintiff. The gravamen of plaintiff's complaint is that the subject forklift was not equipped with any backup beeper or other alarm system which would have been activated when the forklift was being operated in reverse and the absence of same was the proximate cause of his accident. The dispositive issue on appeal concerns that part of an order of Supreme Court denying summary judgment to Clark and Thompson.

*Scarangella v Thomas Built Buses* (93 NY2d 655 [1999]) sets forth specific governing principles to be applied in cases where, as here, a plaintiff claims a product without an optional safety feature is defectively designed because the equipment was not standard (*id.* at 661). The Court of Appeals explained: "The product is not defective where the evidence and reasonable inferences therefrom show that: (1) the buyer is thoroughly knowledgeable regarding the product and its use and is actually aware that the safety feature is available; (2) there exist normal circumstances of use in which the product is not unreasonably dangerous without the optional equipment; and (3) the buyer is in a position, given the range of uses of the product, to balance the benefits and the risks of not having the safety device in the specifically contemplated circumstances of *the buyer's* use of the product" (*id.*). Here, the evidence and reasonable inferences therefrom convince us that plaintiff failed to raise a material issue of fact in response to the prima facie showing by Clark and Thompson that all three *Scarangella* factors were established in

their favor (*see Bova v Caterpillar*, 305 AD2d 624 [2003]) and, thus, Supreme Court erred in denying summary judgment to them (*see Geddes v Crown Equip. Corp.*, 273 AD2d 904 [2000]).

With respect to the first factor, the record reveals that DeCrescente had been utilizing forklifts in the daily operation of its large distribution facility for well over 20 years prior to plaintiff's accident, including Clark forklifts. Indeed, DeCrescente operates around the clock during the week and, as of plaintiff's accident, employed as many as 30 forklift operators, all of whom it trained on the use of such equipment. Moreover, the normal operation of DeCrescente's facility included forklift operations in the vicinity of "pedestrian employees." Thus, we are satisfied that DeCrescente was "thoroughly knowledgeable" about forklifts and their use when it entered into the 1995 lease (*see Campos v Crown Equip. Corp.*, 2001 US Dist LEXIS 24575 [SD NY, Aug. 31, 2001, Brieant, J., 01 Civ 0174]). The record further establishes that DeCrescente was actually aware that safety features were available.

DeCrescente's longtime warehouse manager, who was integrally involved in the 1995 leasing of the new forklifts, testified that prior to that lease, he had seen *and* read a manual put out by Clark entitled "Employer's Guide to Material Handling Safety" (hereinafter the Clark manual).[1] This document discusses the availability of pedestrian warning devices. While section 2 of the Clark manual only generally references "Pedestrian warning devices,"[2] section 3 again references them and specifically states: "If you have installed *audible* or *visual* warning equipment *such as rotating lights or backup alarms*, your operators must understand what this equipment is for, and how it functions. They must also know that they cannot rely on this equipment completely. Where operators are performing jobs near pedestrians or fellow workers, they must continue to use extreme caution" (emphasis added). Thereafter, under a section entitled "Hazard Avoidance Training," there exists a subsection entitled "Pedestrians" in which employers were reminded that the manual had "also discussed the use of *optional safety equipment such as audible or visual warning equipment*" (emphasis added) and that employees must be trained to "[w]atch for people in your work area because they may not watch for you, *even if you have warning lights or alarms*" (emphasis added).

---

1. As a Clark customer in the early 1990s, DeCrescente was provided with a copy of the Clark manual.

2. In denying summary judgment, Supreme Court found that the Clark manual "simply refers to, but does not identify, 'pedestrian warning devices.'" This statement is inaccurate as the manual does indeed identify specific devices.

Thus, DeCrescente was certainly aware through this particular written source that audible and visual backup alarm systems were available safety options (*see Patane v Thompson & Johnson Equip. Co.*, 233 AD2d 905 [1996]; *see also Jackson v Bomag GmbH*, 225 AD2d 879, 882 [1996], *lv denied* 88 NY2d 805 [1996]). Additionally, prior to the actual leasing of the new forklifts in 1995, DeCrescente's warehouse manager specifically inquired about the need for an audible backup alarm system and was correctly advised by Thompson that they were not required by law or regulation. This option was not chosen at that time because it was considered to be too noisy and confusing.

Moreover, the availability of optional backup warning systems—both audible and visual—was also described in writing as part of the lease proposal submitted to DeCrescente by Thompson (*see Patane v Thompson & Johnson Equip. Co., supra*). The record contains a lease proposal dated May 25, 1995 on Thompson letterhead to DeCrescente that clearly states that "[o]ptionally available safety equipment, *such as flashing lights, backup alarms*, etc., are readily available from Clark and Thompson . . . The enclosed brochure (Clark Industrial Safety Products) details such equipment" (emphasis added). A second document dated May 30, 1995 on Thompson letterhead again clearly states the exact same language.

Indeed, a brochure entitled "Safety Equipment" describes in intimate detail the various safety equipment options available. While Supreme Court, in denying summary judgment, determined that "it is not established in the record that this [safety brochure] was provided to DeCrescente before the lease agreement was made," we make two points. First, a reasonable inference exists in the record establishing that this brochure was in fact provided to DeCrescente at that time.[3] Second, even in the absence of sufficient evidence indicating receipt of this brochure, other evidence, namely, the Clark manual, the manager's inquiry about any legal requirement for an audible backup alarm and the written language of the lease documents, established that DeCrescente was actually aware of the availability of audible and visual optional safety equipment.

---

**3.** According to Thompson's president, it was a matter of general practice and routine in 1995 for all proposals to be in writing on Thompson letterhead, to include a provision about safety options and to include a copy of the subject safety equipment brochure as part of the lease proposal package. According to DeCrescente's controller, he in fact received the proposal from Thompson, read it and recalled that it was part of "a large packet" although he could not specifically recall the other contents of that packet. In our view, it is a reasonable inference from these facts that the safety brochure was indeed provided to DeCrescente prior to the lease.

With respect to the second *Scarangella* factor, we are satisfied, as was Supreme Court and numerous other courts who have considered the issue (*see Bova v Caterpillar*, 305 AD2d 624 [2003], *supra*; *Geddes v Crown Equip. Corp., supra*; *Patane v Thompson & Johnson Equip. Co., supra*; *see also DiMaria v Komatsu Forklift U.S.A.*, 2003 US Dist LEXIS 10550 [ED NY, June 20, 2003, Dearie, J.]; *Campos v Crown Equip. Corp.*, 2001 US Dist LEXIS 24575 [SD NY, Aug. 31, 2001, Brieant, J., 01 Civ 0174], *supra*), that the forklift, which met all national and industry standards, was safe for its intended use when properly maintained and operated. Indeed, no law or regulation mandated a backup alarm or other safety device on forklifts. Moreover, the subject forklift provided its operators with unobstructed views to the rear while operating in reverse, was equipped with a manually activated service horn to warn pedestrians in its vicinity and was painted a high visibility color. As noted in *Campos v Crown Equip. Corp.* (*supra* at *8*), "[u]nder normal circumstances of use of a forklift in a warehouse, as was the situation in this case, the driver of the equipment and surrounding individuals are aware of the machinery and alert to its use. Unfortunate accidents do occur, but there is no unreasonable dangerousness inherent in a forklift operated without an alarm that engages [when] the forklift is operated in reverse gear." In short, plaintiff failed to demonstrate that in all normal circumstances the absence of a backup alarm or other safety device on a forklift is unreasonably dangerous (*see id.*). The conclusory assertions of his expert are unsupported by sufficient facts, data or industry regulations and thus failed to raise a question of fact (*see Bova v Caterpillar, supra*; *Geddes v Crown Equip. Corp., supra*; *Campos v Crown Equip. Corp., supra*).

Turning to the last prong of the *Scarangella* test, we are again satisfied that the record establishes that DeCrescente was in a better position than Clark or Thompson to decide what optional safety features were needed for its specific beverage distribution operation. DeCrescente, which had utilized forklifts in its facility for over 20 years prior to plaintiff's accident, knew the specific conditions of its facility, knew how the forklifts would be used on a day-to-day basis and knew how its numerous operators would be trained (*see DiMaria v Komatsu Forklift U.S.A., supra*). The presence of pedestrians in the work area of the forklifts was known to DeCrescente, DeCrescente conducted its own training of employees on the safe operation of forklifts and also provided them with written safety rules concerning such operation. Additionally, it was aware of how audible backup alarms generally would work within the confines of its large facility as delivery trucks were equipped with them.

Finally, the Clark manual not only references the existence of optional safety features, it also states on numerous occasions that it is up to the *employer* to assess the need for pedestrian warning devices. Specifically, it states: "You, the employer, must assess the need for pedestrian warning devices, determined by the special conditions of your operation. This assessment is a critical part of your total plant safety program. No single combination of pedestrian warning equipment can provide the means to the safest environment in all applications . . . [h]owever, there are many pedestrian warning devices available that may fit into your overall plant safety program." Given all these factors, particularly evidence that the dangers of forklifts vary depending on the job site (*see Rosado v Proctor & Schwartz*, 66 NY2d 21, 26 [1985]; *Jackson v Bomag GmbH*, 225 AD2d 879, 883 [1996], *supra*), we conclude, as have other courts who have considered the issue (*see Bova v Caterpillar, supra*; *Geddes v Crown Equip. Corp., supra*; *Patane v Thompson & Johnson Equip. Co., supra*; *DiMaria v Komatsu Forklift U.S.A., supra*; *Campos v Crown Equip. Corp., supra*), that DeCrescente, as its purchaser, was in the best position to evaluate the need for any optional safety features (*see Vannucci v Raymond Corp.*, 258 AD2d 198 [1999]; *Fallon v Hannay & Son*, 153 AD2d 95, 100 [1989]; *see generally Warlikowski v Burger King Corp.*, 9 AD3d 360 [2004]).

Given our finding that summary judgment should have been granted to Clark and Thompson, the parties' remaining contentions are academic.

Cardona, P.J., Crew III, Peters and Spain, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendants' motions; said motions granted, summary judgment awarded to defendants and complaint dismissed; and, as so modified, affirmed.