[909 NE2d 563, 881 NYS2d 641]

SAMUEL PASSANTE et al., Appellants, v AGWAY CONSUMER PROD-
UCTS, INC., Doing Business as G & P FRESH PAC, Defen-
dant, and MULLEN INDUSTRIAL HANDLING CORP. et al.,
Respondents.

Argued March 25, 2009; decided May 5, 2009

**POINTS OF COUNSEL**

*Mackenzie Hughes LLP,* Syracuse (*W. Bradley Hunt* and *Arthur W. Wentlandt* of counsel), for appellants. I. There are issues of fact as to whether the dock leveler was defective because it was sold without the Dok-Lok safety system. (*Sprung v MTR Ravensburg,* 99 NY2d 468; *Gebo v Black Clawson Co.,* 92 NY2d 387; *Scarangella v Thomas Built Buses,* 93 NY2d 655; *Ferrante v American Lung Assn.,* 90 NY2d 623; *Rite-Hite Corp. v Kelley Co., Inc.,* 629 F Supp 1042, 774 F Supp 1514; *Rosado v Proctor & Schwartz,* 66 NY2d 21.) II. There are issues of fact as to whether the dock leveler was defective because it was designed with a 150-pound walk-down weight and sold without any instructions regarding how that walk-down weight could be adjusted so that the dock leveler could safely be used by a person—such as Samuel Passante—weighing less than 150 pounds. (*Gebo v Black Clawson Co.,* 92 NY2d 387; *Caprara v Chrysler Corp.,* 52 NY2d 114; *Ferrante v American Lung Assn.,* 90 NY2d 623; *Cover v Cohen,* 61 NY2d 261; *Dunn v Black Clawson Co., Inc.,* 38 AD3d 1212.)

*Rupp, Baase, Pfalzgraf, Cunningham & Coppola LLC,* Buffalo (*Jeffrey F. Baase* of counsel), for Mullen Industrial Handling Corp., respondent. I. The Fourth Department's holding that Mullen Industrial Handling Corp. established its entitlement to summary judgment on plaintiff's design defect cause of action should be affirmed. (*Scarangella v Thomas Built Buses,* 93 NY2d 655; *Rosado v Proctor & Schwartz,* 66 NY2d 21.) II. The Appellate Division's dismissal of plaintiff's failure to warn cause of action should be affirmed: plaintiff was well aware of the hazards of walking on the dock leveler's lip and chose to ignore both Mullen Industrial Handling Corp.'s instructions and printed warnings. (*Liriano v Hobart Corp.,* 92 NY2d 232; *Banks v Makita, U.S.A.,* 226 AD2d 659; *Pigliavento v Tyler Equip. Corp.,* 248 AD2d 840; *Baptiste v Northfield Foundry & Mach. Co.,* 184 AD2d 841; *Felle v W.W. Grainger, Inc.,* 302 AD2d 971; *Lombard v Centrico, Inc.,* 161 AD2d 1071; *Neri v John Deere*

*Co.,* 211 AD2d 915; *Johnson v Johnson Chem. Co.,* 183 AD2d 64; *Romano v Stanley,* 90 NY2d 444; *Amatulli v Delhi Constr. Corp.,* 77 NY2d 525.)

*Hancock & Estabrook, LLP,* Syracuse (*Janet D. Callahan* and *Mark J. Schulte* of counsel), for Rite-Hite Corporation, respondent. I. The Fourth Department properly granted summary judgment on the defective design claim. (*Scarangella v Thomas Built Buses,* 93 NY2d 655; *Biss v Tenneco, Inc.,* 64 AD2d 204, 46 NY2d 711; *Geddes v Crown Equip. Corp.,* 273 AD2d 904; *Pigliavento v Tyler Equip. Corp.,* 248 AD2d 840; *Rosado v Proctor & Schwartz,* 66 NY2d 21; *Rite-Hite Corp. v Kelley Co., Inc.,* 629 F Supp 1042; *Voss v Black & Decker Mfg. Co.,* 59 NY2d 102.) II. The Appellate Division properly dismissed plaintiffs' claim based on an alleged failure to provide an adequate warning. (*Liriano v Hobart Corp.,* 92 NY2d 232; *Lonigro v TDC Elecs.,* 215 AD2d 534; *Oza v Sinatra,* 176 AD2d 926; *Ruggles v Werner Co.,* 203 AD2d 913; *Nieves v Bliss Co.,* 231 AD2d 697; *Bigness v Powell Elecs.,* 209 AD2d 984; *Fallon v Hannay & Son,* 153 AD2d 95; *Merritt v Raven Co.,* 271 AD2d 859; *Preston v Peter Luger Enters., Inc.,* 51 AD3d 1322; *Romano v Stanley,* 90 NY2d 444.)

## OPINION OF THE COURT

PIGOTT, J.

Samuel Passante, an employee of Agway Consumer Products, Inc., doing business as G & P Fresh Pac, was injured while using a mechanical dock leveler at the company's warehouse in DeWitt. The dock leveler was manufactured by Rite-Hite Corporation and sold to G & P by Mullen Industrial Handling Corp. The dock leveler at issue here is a mechanical platform designed to provide a ramp between a loading dock and the bed of a truck or tractor trailer. When not in use, the dock leveler is flat and part of the loading dock floor. It rises to match the height of the load bed, so as to enable forklifts or pallet trucks to move in and out of the trailer.

Once activated, the platform of the leveler swings up, and a hinged lip at its edge also moves up—from a pendent position perpendicular to the platform to a position in which it forms an extension of the platform—in order to meet the trailer bed. The operator then walks towards the edge of the leveler platform and, if his weight is sufficient, forces the platform down—toward the trailer bed—so that the lip catches the trailer floor. This is known as "walking down" the leveler. Once the hinged

lip has engaged the bed of the trailer, it provides a transition between the loading dock floor and the trailer bed. However, the lip is designed to rotate back into its pendent position if it is not supported, and the parties do not dispute that a person standing on an unsupported lip will fall. A Rite-Hite instruction sheet was posted on a wall in the loading dock area, which, among other things, warned operators not to walk on the lip of a dock leveler when "walking down" the leveler.

According to Rite-Hite's design engineer, the leveler here was designed for a "150 pound walk down," meaning that a person who weighs about 150 pounds would be able to bring the leveler platform down to the requisite height by simply walking to the edge of the platform. Passante, who weighed 140 pounds, testified that he was not heavy enough to force the leveler platform down to the trailer bed without standing on the hinged lip. Moreover, Joseph Panebianco, the G & P assistant facility manager and a heavier man, testified that he too was unable to "walk down" the leveler successfully without standing on the lip.

Mullen had offered to sell G & P a system manufactured by Rite-Hite, called "Dok-Lok," that secures a tractor trailer to the loading dock and includes a warning system so that workers know when they can safely enter the trailer and drivers know when they can safely pull away. G & P declined to buy a Dok-Lok system, instead relying on wheel chocks—wedges placed beneath or behind a truck's wheels to prevent movement. Panebianco testified that he decided against Dok-Lok partly because it would require having an operator and also because a driver who "doesn't use his head and drives off" while a Dok-Lok is engaged would in his opinion tear the bumper from his trailer.

Passante's accident occurred when he was "walking down" the dock leveler in order to get the platform to rest on a trailer. He was standing on the hinged lip of the leveler as it made contact with the trailer bed. Unbeknownst to Passante, the driver of the tractor trailer had not completed the process of parking, and no chocks were in place. Passante remained standing on the hinged lip for a "split second" after completing the "walk down." At that moment, the driver began to move the tractor trailer forward and, without the support of the trailer bed, the lip fell to its pendent position, causing Passante to fall onto a cement and steel grate, sustaining injury.

Passante and his wife commenced this action against G & P, Rite-Hite and Mullen, alleging, among other things, that the

dock leveler Mullen sold to G & P was defectively designed by Rite-Hite because it lacked equipment restraining the tractor trailer or securing it to the loading dock while the dock leveler was in use, and lacked a system to warn the operator when it was safe to enter the trailer or, in the alternative, notifying the driver that a dock leveler was in position. The Passantes also allege that Mullen negligently failed to warn G & P of the danger that movement of a tractor trailer during the operation of a dock leveler would cause it to collapse. The complaint also alleged manufacturing defects, negligent installation and maintenance, and breach of warranty. Rite-Hite cross-claimed against Mullen.

Following discovery, Mullen moved for summary judgment, attaching deposition transcripts and various other documents, including a Rite-Hite sales brochure describing its Dok-Lok trailer restraint systems. The brochure vividly described the dangers faced by the operators of dock levelers when tractor trailers are unsecured. Rite-Hite described the space between loading dock and trailer bed—the space bridged by its dock levelers—as a warehouse's "Danger Zone."

> "Every time a lift truck impacts the ramp, crosses [the Danger] Zone and enters a trailer, the trailer can inch forward. When it moves too far, or departs prematurely, the lift truck and driver can tumble into the gap with disastrous results. . . .

> "The impact of a lift truck moving in and out of the trailer during loading operations causes the trailer to inch forward slightly—even with the brakes set and the wheels chocked. When the trailer moves beyond the reach of the leveler's lip, the lip falls, leaving a large gap. The lift truck and operator may then topple off the leveler or trailer and onto the driveway. . . .

> "[In another common scenario] the truck driver, assuming loading operations are completed, pulls away without warning. This unexpected departure from the dock can cause the forklift and operator to be thrown onto the driveway."

The brochure noted that wheel chocks were ineffective and expensive, and recommended one of its Dok-Lok systems to ensure the safety of dock leveler operators.

In opposition to Mullen's motion, plaintiffs submitted the affidavits of a mechanical engineer and an industrial engineer.

The mechanical engineer, noting the testimony from Passante and Panebianco to the effect that they could not get the dock leveler to operate without standing on its lip, had inspected the dock leveler involved in the accident. Even with a body weight of 180 pounds, the mechanical engineer was unable to urge the dock leveler to a horizontal position. The engineer concluded that, at 140 pounds, Passante would not be able to impel the dock leveler down simply by "walking down" to the edge of its platform. "As a result," he observed, "it was necessary for Samuel Passante, as well as for Joseph Pan[e]bianco, to position themselves on the extended lip in order for the equipment to achieve its operational goals." The mechanical engineer, noting that "the unscheduled departure of a tractor trailer is a known risk in the materials handling industry," concluded that "with a reasonable degree of engineering certainty, the equipment created an unreasonable risk of harm to the operator both from falls from the collapsing lip, as well as from falls caused by the unscheduled departures of tractor trailers."

The industrial engineer's opinion was that the

> "warnings positioned on the wall, remote from the pull-chain which initiates the operation of the mechanical dock leveler in question, would not effectively remind the operator of the dangers associated with walking on the extended lip of the equipment. . . .

> "To properly warn the operator, . . . a warning medallion connected to the links of the pull-chain directly at the point of operation was necessary. . . .

> "Additionally, . . . some type of safety striping or demarcation of the lip itself was necessary to fully advise the operator as to the specific dangers involved in the steps he was taking during the operation of the equipment, to wit approaching the end of the platform and stepping onto the hinged lip itself."

The industrial engineer also noted that neither Rite-Hite nor Mullen had provided G & P with instructions for adjusting the dock leveler for operators of different body weights or with a warning that "operation outside of the parameters of 150 pound nominal walk down weight [i.e. the inability of someone weighing approximately 150 pounds to 'walk down' the dock leveler without standing on the lip] indicates that the equipment is not

operating properly." The industrial engineer concluded "with a reasonable degree of engineering certainty, this lack of properly placed warnings combined with the complete lack of warnings or instructions to the proper operating capacity of the equipment, creates an unreasonable risk of harm to the operator."

Supreme Court denied Mullen's motion, finding questions of fact concerning defective design and failure to warn. The Appellate Division reversed, dismissing the Passantes' complaint as against Mullen in its entirety (294 AD2d 831 [2002]). Two dissenting Justices would have held that the defective design and failure to warn claims survived summary judgment.

After the Appellate Division's decision, Mullen moved for summary judgment dismissing Rite-Hite's cross claims and Rite-Hite sought summary judgment dismissing plaintiffs' complaint.* Supreme Court dismissed Rite-Hite's cross claims without prejudice on condition that Rite-Hite "may reassert its cross-claims in the event of a reversal or modification in plaintiff's favor" of the Appellate Division's order by this Court. Supreme Court also required plaintiffs to consent to judgment dismissing their action should this Court affirm the Appellate Division's order. Plaintiffs appealed, pursuant to CPLR 5601 (d), bringing up for review the Appellate Division's order. We now modify the judgment appealed from and the Appellate Division's order, and reinstate the causes of action for defective design and failure to warn.

Mullen and Rite-Hite rely on our decision in *Scarangella v Thomas Built Buses* (93 NY2d 655 [1999]). There, as here, plaintiff argued that a product was defectively designed insofar as it did not incorporate, as standard equipment, a particular safety feature. In *Scarangella*, plaintiff, who was employed as a school bus driver, was injured when a school bus struck her, while being operated in reverse in a bus parking yard. The distributor that sold the bus to the defendant school bus company had offered, as an optional safety feature, an alarm that would automatically sound when a driver shifted the bus into reverse gear. The bus company chose not to buy this equipment because the alarms were noisy and the buses were parked in a yard in a residential neighborhood where noise pollution was an issue.

---

* Supreme Court had dismissed the Passantes' complaint as against G & P, after the United States Bankruptcy Court for the Northern District of New York determined that the action against G & P was barred by reason of workers' compensation.

We held that a product that fails to incorporate safety equipment is not defective, as a matter of law,

> "where the evidence and reasonable inferences therefrom show that: (1) the buyer is thoroughly knowledgeable regarding the product and its use and is actually aware that the safety feature is available; (2) there exist normal circumstances of use in which the product is not unreasonably dangerous without the optional equipment; and (3) the buyer is in a position, given the range of uses of the product, to balance the benefits and the risks of not having the safety device in the specifically contemplated circumstances of *the buyer's* use of the product. In such a case, the buyer, not the manufacturer, is in the superior position to make the risk-utility assessment, and a well-considered decision by the buyer to dispense with the optional safety equipment will excuse the manufacturer from liability." (93 NY2d at 661.)

Because all three of the factors were present, a departure from strict liability was justified in *Scarangella*. First, defendant was a highly knowledgeable consumer, experienced in operating school buses and aware of the dangers and of the availability of the optional alarm (*id.*). Second, defendant's buses were used in reverse only in the parking yard (i.e. where there were no school children or other nonemployee pedestrians), so that the risk of harm from the absence of a backup alarm was not substantial. Moreover, the bus drivers were instructed to use caution and to sound their regular horns when reversing. (93 NY2d at 661-662.) Third, the bus company, rather than the distributor,

> "was in a position to assess the efficacy of alternative safety measures in its operational rules and training of drivers. The buyer had the ability to understand and weigh the significance of costs associated with noise pollution and neighborhood relations, given the particular suburban location of the parking lot, against the anticipated, foreseeable risks of operating buses in a parking lot without a back-up alarm device or safeguard." (*Id.* at 662.)

Because all three factors were present and plaintiff created no triable issues with respect to her claim that the absence of a

backup alarm was a design defect, the bus company was entitled to summary judgment as a matter of law.

Here, it is conceded that the first *Scarangella* principle is met; G & P was knowledgeable about dock levelers and knew that Dok-Lok was available as an option. However, defendants' further reliance on *Scarangella* is misplaced because they have not made a prima facie showing of entitlement to judgment as a matter of law relative to the second factor.

Defendants have not shown that the dock leveler would normally be used in circumstances in which the product is not unreasonably dangerous without a trailer restraint system such as Dok-Lok. Indeed, the Rite-Hite brochure, submitted by Mullen itself in its summary judgment papers, describes, as a pervasive risk, the danger that a tractor trailer will inch forward "even with the brakes set and the wheels chocked" or be driven forward inadvertently, with the result that a dock leveler operator falls from the leveler or trailer. Moreover, defendants have not refuted—whether by expert affidavits or by deposition testimony—the opinion of the mechanical engineer that the dock leveler, because of its collapsing lip, posed an unreasonable risk of harm to its operator.

In *Scarangella*, the risks associated with a bus reversing were limited because the buses only reversed when they were in the parking yard and the people in the yard—mostly other bus drivers—could carry on their tasks and avoid contact with the reversing buses simply by exercising caution. There was nothing about the buses, engaged in normal reverse driving, that would make them unreasonably dangerous. By contrast, the record here supports plaintiffs' position that a dock leveler, of the design involved here, creates a substantial risk of harm as normally used. This is because the dock leveler has a hinged lip that collapses if not supported, and yet the lip is an extension of the platform the operator must "walk down" in order to adjust the leveler to the correct height. Indeed the record evidence suggests further that operators of average weight or less must step onto the lip in order to "walk down" the leveler. If so, the dock leveler lip posed a risk to operators that could not be avoided simply by cautious operation.

We conclude that defendants have not demonstrated the absence of material issues of fact with respect to whether normal circumstances of use exist in which the dock leveler is not unreasonably dangerous without a trailer restraint system. Consequently, the second *Scarangella* factor is not satisfied, and

the defective design cause of action should be reinstated. Having reached this conclusion, it is not necessary to discuss the third *Scarangella* factor.

■ Finally, there are triable issues of fact as to the sufficiency of the warnings concerning this equipment. An instruction sheet was posted on a wall in the loading dock area that included a warning not to walk on the lip of a dock leveler when "walking down" the leveler; and Passante was aware that the lip would begin to collapse during a "walk down" if the operator did not complete the "walk down" quickly enough. However, the instruction sheet contains no warning that it is dangerous to remain on the lip, even momentarily, *after* it has engaged the trailer bed. Passante himself was familiar, from a loading dock where he had worked previously, with a different design of dock leveler in which the hinged lip did not collapse. Moreover, plaintiffs submitted the affidavit of an industrial engineer who opined that the posted warning was insufficient and that a warning at the point of operation as well as striping or demarcation of the lip itself were necessary to remind the operator of the dangers of standing on the lip.

Thus, on this record, we cannot conclude as a matter of law that Passante was fully aware of the danger of standing on the dock leveler lip *after* it had engaged the trailer bed, or that site-of-operation warnings of the type recommended by the industrial engineer would have been superfluous. "[I]n cases where reasonable minds might disagree as to the extent of plaintiff's knowledge of the hazard, the question is one for the jury" (*Liriano v Hobart Corp.*, 92 NY2d 232, 241 [1998]). Therefore, the cause of action for failure to warn should also be reinstated.

Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be modified, without costs, in accordance with this opinion, and, as so modified, affirmed.

SMITH, J. (dissenting). In *Scarangella v Thomas Built Buses* (93 NY2d 655 [1999]), we held that a seller of equipment whose buyer refused to purchase an optional safety feature is, under certain conditions, immune from a claim that the product without the safety feature was defectively designed. This case is essentially a duplicate of *Scarangella*, and the majority has overruled *Scarangella* without saying so.

I

Rite-Hite manufactured, and Mullen sold, dock levelers.

Rite-Hite also manufactured, and Mullen also offered for sale, a safety device known as a "Dok-Lok," which locks a truck to the loading platform, to prevent the truck from driving or rolling away while the dock leveler is in use.

Undoubtedly, both Rite-Hite and Mullen would have been delighted to sell the Dok-Lok to plaintiff Samuel Passante's employer, G & P, or to any other customer. A Rite-Hite sales brochure, quoted by the majority (majority op at 377), recommended this safety device with the enthusiasm typical of such literature, and Mullen gave G & P quotations for three different Dok-Lok models. But even the cheapest of these models—a manual device that might not have prevented this accident—was expensive; it would have added more than 50% to the cost of the dock leveler. The automatic models would have more than doubled the cost.

G & P was not interested in buying a Dok-Lok. The G & P employee responsible for this decision explained his reasons:

"Q. Did you consider the use of dock-lock equipment at this facility?

"A. Not really, because, there again, for our type of facility, you know, I mean, it really didn't seem to be something that works well in our type of a facility.

"Q. Why do you say that? What is the basis of your conclusion in that regard?

"A. Basically, a lot of our trucks are in and out relatively quickly, and they are quite often, my understanding with that type of equipment, you almost always have to have someone who is on the dock all the time to release—and my understanding with that type of equipment, there is an arm that comes down and catches the trailer, basically holds the trailer in. Number one, you have got to have someone, who is going to be operating that type of equipment. In our type of operation, you know, it is not feasible. And, number two, my experience with that type of equipment is that it really doesn't hold the truck in. If the thing comes down on your ICC bumper and the driver in the truck drives off, he just drives off and wrecks his bumper. It's been my experience, where I have seen some of this equipment, that if the driver doesn't use his head and

drives off, all he ends up doing is tearing the heck out of the back of his trailer. So, I guess, I'm not convinced that it really works well, and it certainly doesn't seem to work well in this particular facility."

The majority today holds that Rite-Hite and Mullen may be sued for not overruling the buyer's objections and insisting that G & P purchase a dock leveler either with the Dok-Lok or not at all. As we held in *Scarangella*, this holding cannot be justified. Under circumstances like these, whether safety equipment should be bought is a decision for the buyer, not the seller and not the courts.

## II

The defendant in *Scarangella* was a seller of school buses. It "offered buyers as an optional safety feature a back-up alarm that would automatically sound when a driver shifted the bus into reverse gear" (93 NY2d at 657). It sold several buses to the plaintiff's employer, a bus operator, which "chose not to purchase this optional equipment" (*id.*). The plaintiff was injured when a bus backed into her, and claimed that the absence of the alarm was a design defect. We held that this claim could not be presented to the jury.

In an effort to lend predictability to litigation of this kind, we set out "some governing principles for cases where a plaintiff claims that a product without an optional safety feature is defectively designed because the equipment was not standard" (*id.* at 661). We said:

> "The product is not defective where the evidence and reasonable inferences therefrom show that: (1) the buyer is thoroughly knowledgeable regarding the product and its use and is actually aware that the safety feature is available; (2) there exist normal circumstances of use in which the product is not unreasonably dangerous without the optional equipment; and (3) the buyer is in a position, given the range of uses of the product, to balance the benefits and the risks of not having the safety device in the specifically contemplated circumstances of *the buyer's* use of the product." (*Id.*)

These principles require dismissal of plaintiffs' design defect claim here. G & P, as the majority concedes, was knowledgeable about dock levelers and knew that the Dok-Lok was available. It

is no less true in this case than it was in *Scarangella* that "there exist normal circumstances of use in which the product is not unreasonably dangerous without the optional equipment." And G & P was in as good a position as the buyer in *Scarangella* to balance benefits and risks.

According to the majority, the second *Scarangella* test is not met here because "[d]efendants have not shown that the dock leveler would normally be used in circumstances in which the product is not unreasonably dangerous without a trailer restraint system" (majority op at 381). This is a misstatement, or at best a confusing paraphrase, of what *Scarangella* said. Under *Scarangella*, the second question is not whether equipment "would normally be used" without unreasonable danger; it is whether "there exist normal circumstances of use" where the danger is not unreasonable. In other words, if there exist buyers who use the product normally and can forgo the safety feature without unreasonable risk, the judgment as to which buyers ought to do so is left to the buyers themselves.

Here, the record shows that circumstances did exist where a dock leveler without a Dok-Lok was reasonably safe in normal use. Indeed, the use of the system at the loading dock involved in this case was not unreasonably dangerous. The danger that a truck would roll away was absent here, because the ground on which trucks parked sloped uphill. (For this reason, the majority's discussion of wheel chocking is irrelevant.) And the risk of what actually happened—a driver's decision to move his truck while someone was standing at the edge of the dock leveler—could have been eliminated by a simple precaution: G & P could have instructed its employees not to use the dock leveler until they had confirmed that the truck's motor was off. Thus this case is not different from *Scarangella*, where the buyer's employees "were instructed as part of their training not to operate buses in reverse except in the yard" and "were also instructed to exercise caution and sound their regular horns when backing up" (93 NY2d at 662).

The third *Scarangella* test, which the majority does not discuss, is also met here. G & P, which loaded merchandise onto trucks from loading docks as a routine part of its business, was "in a position . . . to balance the benefits and the risks . . . in the specifically contemplated circumstances" of its own use of the dock leveler. In fact, it did balance those benefits and risks, as the above-quoted testimony of its decision-maker shows. If the buyer struck the wrong balance, there is no good reason to hold the manufacturer and seller liable.

### III

The majority also concludes that plaintiffs' failure-to-warn claim can withstand summary judgment. I do not agree. Of course it is true, as it is in every case, that more and better warnings could possibly have been given; and it is true, as it is in almost every case, that plaintiffs' expert has opined that more and better warnings should have been given; but we need not decide whether this is enough to raise a jury question on the issue of negligent failure to warn, for it is abundantly clear that no warning could have prevented this accident (*see Gebo v Black Clawson Co.*, 92 NY2d 387, 394-395 [1998]).

The majority suggests that a warning might have made a difference because Mr. Passante "was familiar, from a loading dock where he had worked previously, with a different design of dock leveler in which the hinged lip did not collapse" (majority op at 382). But the majority fails to mention that, during the five months he worked at G & P, Mr. Passante had hundreds of experiences with the Rite-Hite dock leveler and learned that the hinged lip on that equipment *did* collapse. He testified:

> "Q. How did you know that [the lip] would drop if you didn't go out there fast enough?
>
> "A. I pulled the chain I don't know how many hundreds of times, and if you didn't walk it out there fast enough, the lip would just go down. There was nothing to hold it up until it hit the truck.
>
> "Q. So prior to your accident on January 16th, 1997, you knew, sir, didn't you, that the lip was designed to fall freely?
>
> "A. Yeah."

It is mystifying how, in the face of this testimony, the majority "cannot conclude as a matter of law that Passante was fully aware of the danger of standing on the dock leveler lip" (*id.*).

### IV

I think both the majority's holdings are wrong. But the more troubling of the two is the evisceration of *Scarangella*, which I fear will have real economic consequences. The predictability that was offered until today to manufacturers and distributors of equipment in this state is gone, and the result can only be an increase in cost—in the cost of liability insurance, and in the

cost of safety features that buyers will no longer have the option to refuse. In much of this state, our economy struggles in the best of times, and these are not the best of times. Decisions like today's can only make things worse.

Chief Judge LIPPMAN and Judges CIPARICK and JONES concur with Judge PIGOTT; Judge SMITH dissents in a separate opinion in which Judges GRAFFEO and READ concur.

Judgment appealed from and order of the Appellate Division brought up for review modified, etc.