# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**209**

**CA 15-00453**

PRESENT: SMITH, J.P., PERADOTTO, CURRAN, AND SCUDDER, JJ.

---

CHARLES TERWILLIGER AND HELEN TERWILLIGER,
PLAINTIFFS-RESPONDENTS-APPELLANTS,

V                                          MEMORANDUM AND ORDER

MAX CO., LTD., MAX USA CORP.,
DEFENDANTS-APPELLANTS-RESPONDENTS,
AND NUMAX, INC., DEFENDANT.
(APPEAL NO. 1.)

---

GOLDBERG SEGALLA, LLP, BUFFALO (JOHN P. FREEDENBERG OF COUNSEL), FOR
DEFENDANTS-APPELLANTS-RESPONDENTS.

PAUL WILLIAM BELTZ, P.C., BUFFALO (ANNE B. RIMMLER OF COUNSEL), FOR
PLAINTIFF-RESPONDENT-APPELLANT CHARLES TERWILLIGER.

LAW OFFICES OF RICHARD S. BINKO, CHEEKTOWAGA (RICHARD S. BINKO OF
COUNSEL), FOR PLAINTIFF-RESPONDENT-APPELLANT HELEN TERWILLIGER.

---

Appeal and cross appeal from an order of the Supreme Court, Erie County (Patrick H. NeMoyer, J.), entered November 12, 2014. The order, inter alia, granted in part and denied in part the motion of defendants for summary judgment.

It is hereby ORDERED that said cross appeal from the order insofar as it granted that part of defendants' motion with respect to the claim for breach of implied warranty of merchantability/fitness for ordinary purposes is unanimously dismissed (*see Loafin' Tree Rest. v Pardi* [appeal No. 1], 162 AD2d 985, 985) and the order is affirmed without costs.

Memorandum: Plaintiffs commenced this action alleging, inter alia, strict products liability and seeking damages for injuries sustained by Charles Terwilliger (plaintiff), an employee of HMT Enterprises Unlimited (HMT), a company owned by his wife, plaintiff Helen Terwilliger. Plaintiff was injured when a pneumatic nail gun used by another HMT employee accidentally came into contact with plaintiff's head and fired a three-inch nail into his skull and brain. The nail gun was manufactured by defendant MAX Co., Ltd. and distributed by defendant MAX USA Corp. (MAX defendants), and was sold by defendant Numax, Inc. By the order in appeal No. 1, Supreme Court granted in part the motion of defendants seeking summary judgment dismissing the complaint by dismissing the first and second causes of action to the extent that they allege failure to warn, and the third

cause of action, for breach of express and implied warranty for both ordinary purposes and a specific purpose. The court denied the motion insofar as defendants sought summary judgment dismissing the first and second causes of action to the extent that they allege design defect. The MAX defendants appeal and plaintiffs cross-appeal from that order. In appeal No. 2, defendants appeal from an order that, inter alia, granted only those parts of plaintiffs' motions for leave to reargue defendants' motion with respect to the claim for breach of the "implied warranty of merchantability/fitness for ordinary purposes," and reinstated the third cause of action to that extent. We affirm the orders in both appeal Nos. 1 and 2.

It is undisputed that the subject nail gun operates in two ways: by the contact trip, also called the "bump" mode, in which the operator holds the depressed trigger and the nails are fired each time the contact arm touches the work surface; and by the "sequential fire" mode, in which the nail is fired after the contact arm touches the work surface and the trigger is pulled, firing one nail each time that process is repeated. Plaintiffs allege that the design of the nail gun is defective because it is equipped with the bump mode, rather than with only the sequential fire mode; and that the sequence of trigger activation, which determines the mode of operation, causes operator confusion as to which mode of operation is in use, which they allege happened here. As relevant herein, they also allege liability under the theories of failure to warn, design defect and breach of express and implied warranties for ordinary purposes and for a specific purpose.

Defendants sought summary judgment dismissing the complaint on the grounds that the dual function of the nail gun meets the applicable standards approved by the American National Standard for Power Tools (ANSI); that the warnings were appropriate; and that, in any event, the employee had extensive experience in the use of nail guns and thus there was no causal connection between the employee's alleged lack of warning information and the accident. Although defendants failed to establish that HMT received the manual for the two nail guns it acquired, which contained the instruction that the operator was not to touch the trigger unless he/she intended to drive a fastener, it is undisputed that a warning on the nail gun is the recommended ANSI warning to, inter alia, "Keep fingers AWAY from trigger when not driving fasteners to avoid accidental firing."

"Generally, the adequacy of the warning in a products liability case based on failure to warn is, in all but the most unusual circumstances, a question of fact to be determined at trial" (*Johnson v Delta Intl. Mach. Corp.*, 60 AD3d 1307, 1309 [internal quotation marks omitted]). Here, however, defendants established that the employee had used nail guns for approximately five years prior to the accident and that he was aware of the specific hazard that caused plaintiff's injury, i.e., that the nail gun would fire a nail if the contact arm touched something while the trigger was depressed. Thus, defendants established as a matter of law that "any warning would have been superfluous" with respect to the employee (*Wesp v Carl Zeiss, Inc.*, 11 AD3d 965, 968; *see Call v Banner Metals, Inc.*, 45 AD3d 1470,

1471). We therefore reject plaintiffs' contention on their cross appeal in appeal No. 1 that the court erred in granting that part of defendants' motion with respect to the claims for failure to warn. We also reject plaintiffs' contention that the court erred in granting that part of defendants' motion with respect to the claim for breach of an implied warranty for a specific purpose in the third cause of action. Defendants established as a matter of law that HMT did not seek to use the nail gun in a way other than for its ordinary purposes (*cf. Simmons v Washing Equip. Tech.*, 78 AD3d 1645, 1646), and plaintiffs failed to raise an issue of fact (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562).

We next address the appeal of the MAX defendants from the order in appeal No. 1. We conclude that, with respect to plaintiffs' claims for design defect, defendants met their initial burden of establishing that the nail gun was reasonably safe. Their expert engineer explained, inter alia, that the nail gun complied with industry standards set forth by ANSI, and opined that providing only one method of operation would reduce the functional utility of the nail gun (*see Wesp*, 11 AD3d at 967; *cf. Chamberlain v MAC Trailer Mfg., Inc.*, 128 AD3d 1336, 1337-1338).

We further conclude, however, that plaintiffs raised an issue of fact sufficient to defeat the motion with the affidavit of their expert professional engineer. Plaintiffs' expert opined to a reasonable degree of engineering certainty that the nail gun is defective "because it did not have[,] as a sole means of actuation, a full sequential trip trigger" and instead also provided for the option for a "contact trip" or a bump trigger. The expert explained that the center of gravity of the nail gun causes the operator to maintain a finger on the trigger when lowering the nine-pound gun, as was the case here; that the sequence of the use of the trigger to determine the mode of operation causes operator confusion as to which mode of operation is in use, which he opined happened here based upon the testimony of the employee that he thought the nail gun was in sequential fire mode; that government safety studies he reviewed found a much higher rate of injury when the nail gun was in the bump mode; and that tests he performed and studies he reviewed established that the utility of the bump mode does not outweigh the danger of its use because it is "only 10% faster" than the sequential fire mode (*see Schneider v Verson Allsteel Press Co.*, 236 AD2d 806, 806; *cf. Rutherford v Signode Corp.*, 11 AD3d 922, 923, *lv denied* 4 NY3d 702). " 'Where, as here, a qualified expert opines that a particular product is defective or dangerous, describes why it is dangerous, explains how it can be made safer, and concludes that it is feasible to do so, it is usually for the jury to make the required risk-utility analysis' " (*Pierre-Louis v DeLonghi Am., Inc.*, 66 AD3d 859, 861-862).

Contrary to the further contention of the MAX defendants, defendants failed to establish that HMT was aware that a safety trigger was available that would restrict the use of the nail gun to a sequential fire mode. They therefore failed to establish that they are relieved from liability for design defect on the ground that HMT

was in a position to "balance the benefits and the risks of not having the safety device" (*Scarangella v Thomas Built Buses*, 93 NY2d 655, 661; *see Campbell v International Truck & Engine Corp.*, 32 AD3d 1184, 1185).

We reject defendants' contention in appeal No. 2 that the court erred in reinstating the claim for breach of implied warranty for ordinary purposes inasmuch as that claim and the claims for design defect are based on largely identical evidence (*see Fritz v White Consol. Indus.*, 306 AD2d 896, 897-898; *cf. Wesp*, 11 AD3d at 967-968; *see generally Denny v Ford Motor Co.*, 87 NY2d 248, 254-263, *rearg denied* 87 NY2d 969).

Entered:  March 25, 2016                    Frances E. Cafarell
                                            Clerk of the Court