■ ERIC T. MARTIN, Appellant, v TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, Respondent, et al., Defendant. [901 NYS2d 193]—

Judgment, Supreme Court, New York County (Eileen A. Rakower, J.), entered April 10, 2009, upon a jury verdict in favor of Triborough Bridge and Tunnel Authority (TBTA), the only remaining defendant in this action, affirmed, without costs.

The trial court properly exercised its discretion in denying plaintiff's application to preclude TBTA from introducing the expert testimony of a professional engineer as to the cause of the accident. Preclusion of expert evidence on the ground of failure to give timely disclosure, as called for in CPLR 3101 (d) (1) (i), is generally unwarranted without a showing that the noncompliance was willful or prejudicial to the party seeking preclusion (*Nathel v Nathel*, 55 AD3d 434 [2008]). Here, contrary to plaintiff's contention, the delay of the expert disclosure was not a result of mere failure to prepare. Defense counsel explained that he was retained as trial counsel shortly before the trial, and that although he had contacted the expert soon thereafter, the expert needed additional time to do research to form an opinion as to the cause of the accident. Furthermore, the expert disclosure was made about a week after the expert was retained. Under these circumstances, we cannot conclude that the delayed expert disclosure was willful (*see McDermott v Alvey, Inc.*, 198 AD2d 95 [1993]).

Nor can we conclude that the delayed disclosure was prejudicial. To overcome any prejudice that may have resulted from allowing the expert to testify, the trial court gave plaintiff the opportunity to voir dire the expert to avoid any surprises during cross-examination. Although plaintiff accepted the opportunity to do so, he now contends that such a remedy did not adequately cure the prejudice because he did not have sufficient time to prepare for a cross-examination or obtain other evidence to challenge the expert's testimony. He also contends that the trial court rushed him by reminding him that the jury was waiting while he was questioning the expert. However, counsel never asked for an adjournment or additional time to prepare challenges to the expert's testimony, or to retain his own expert, and nothing in the record shows that the court interfered with

or cut short counsel's voir dire of the expert in any way. Additionally, his cross-examination brought out testimony that was favorable to plaintiff on certain material issues.

In any event, even if the trial court did improvidently exercise its discretion in permitting the expert to testify, any error was harmless. Plaintiff argues that the testimony left the jury with an unchallenged expert opinion that his own negligence caused the accident. However, the jury's verdict was based on its finding of lack of negligence on TBTA's part, and the jury never reached the issue of plaintiff's own negligence (*see Gilbert v Luvin*, 286 AD2d 600 [2001]). Concur—Tom, J.P., Moskowitz, Renwick and DeGrasse, JJ.

Manzanet-Daniels, J., dissents in a memorandum as follows: Because I believe that the trial court abused its discretion in denying plaintiff's application to preclude the testimony of defendant's professional engineer, I respectfully dissent.

Plaintiff herein was traveling on the Triborough Bridge when his Ford Explorer overheated. An employee of defendant Triborough Bridge and Tunnel Authority, John Georges, pushed plaintiff's car across the bridge with his wrecker. It is undisputed that plaintiff had his car in neutral and his key in the off position when Georges began pushing him. It is also undisputed that placing a car in neutral disables the power steering and brakes, though it does not preclude manual steering and braking of the vehicle. Finally, it is undisputed that the span across which plaintiff was being pushed crested at its midpoint, and then declined as one traveled towards the Queens side of the bridge.

Georges gave plaintiff four or five pushes towards the midpoint of that bridge. At that point, Georges gave plaintiff one final push, and plaintiff's vehicle acquired momentum due to the decline of the roadway. Plaintiff attempted to apply the brakes, but testified that the brakes would not respond, and felt "really hard." As plaintiff neared the Hoyt Avenue exit, the road declined more precipitously. Plaintiff testified that the vehicle "lurched forward" and he collided with the back of a tractor trailer. He ascribed this lurch to "gravity because [he] was going down the slope." Plaintiff testified that his vehicle was traveling approximately 25 to 30 miles per hour when he crested over the bridge, accelerating to approximately 40 miles per hour at the time of impact. Plaintiff testified that at no point did he turn the engine on to restore the power steering and brakes. John Georges, the operator of the wrecker, similarly testified that as plaintiff crested over the bridge his vehicle acquired speed. Georges observed the brake lights on plaintiff's vehicle.

As plaintiff approached the exit, Georges observed plaintiff's vehicle "wiggle," or swerve, as he attempted to avoid the tractor trailer. Georges testified that he "thought" plaintiff had restarted his vehicle. However, plaintiff's vehicle was in the "off" position when Georges arrived at the accident scene moments after impact.

During the course of discovery, plaintiff demanded, pursuant to CPLR 3101 (d) (1) (i), discovery of any expert witness defendant intended to call at trial. The court also issued an order requiring the parties to "supply expert witness disclosure pursuant to CPLR." While defendant provided notice that it would offer the testimony of medical experts, at no time prior to trial did defendant indicate that it would offer the testimony of an expert engineer as to the cause of the accident.

Trial commenced on March 25, 2009. Plaintiff testified on his case-in-chief, but did not present any expert engineering testimony. After plaintiff rested, defendant served notice of its intent to present the testimony of expert engineer Dr. Bruce Gambardella. Dr. Gambardella, according to the expert disclosure, was expected to render an opinion regarding the "mechanics of injury and cause of the occurrence," including collision speed, vehicle performance parameters, and the capacity of the vehicle's braking system to "retard the vehicle on the subject grade and even stop the vehicle . . . with moderate effort." This notice was apparently attached to the back of defendant's requests to charge the jury, which had been served on plaintiff on March 27, 2009, a Friday.

When the parties next appeared in court, on Monday, plaintiff's counsel registered an objection to the late disclosure. When the court inquired as to the reason for the late notice, defense counsel replied that the witness had just been hired and that he thought the witness's testimony would "help the jury." Counsel stated, "I thought it would be a very positive thing . . . if we had someone who knew about brakes, who was a specialist in brakes, . . . I would like the Court and the jury to know how does a 1994 Ford Explorer travel in neutral with the engine off on that decline and what would cause the vehicle . . . to lurch forward, speed up." Over plaintiff's objection, the court ruled that it would allow the engineer to testify.

On April 1, 2009, plaintiff renewed his motion to preclude the expert testimony of the engineer. Plaintiff's counsel complained that "this is the classic trial by ambush on the part of defense counsel." Counsel further asserted that the expert's testimony regarding how the accident occurred was "speculative at best," and that the prejudicial impact of the testimony outweighed its probative value.

The court adhered to its ruling that Gambardella would be allowed to testify, but stated that any such testimony would be strictly limited to what was contained in his expert disclosure. Plaintiff's counsel asserted that Gambardella had performed his vehicle tests under conditions which differed significantly from those of the instant case. The court asked counsel whether he wanted an opportunity to question the expert about his investigation before the jury came in. Counsel stated he preferred that the witness's testimony be precluded. The court stated that in light of its ruling, and to "overcome whatever prejudice there may be, obviously you are at a disadvantage because going into cross-examination you don't know the answer to all the questions you want to ask," it would permit plaintiff the opportunity to question the witness outside the presence of the jury "so you are not surprised by what he says during his testimony."

Counsel replied "I guess I will have to take that opportunity." However, shortly after examination commenced, defense counsel objected to what he perceived as plaintiff's counsel's attempts to impeach the witness. The court chastised plaintiff's counsel that "[t]he purpose here is not to impeach the witness, but really to get some information." The court stated that if counsel wanted that opportunity, the court was "happy to provide [it]," then noted "we do have a jury waiting." Plaintiff's counsel concluded his examination shortly afterward. His renewed objection to the expert testimony was overruled.

On direct, Gambardella testified, inter alia, that he evaluated the "power off" braking performance in an "exemplar vehicle" by disconnecting the power brake unit from the engine, plugging the line, and removing the check valve. On a brake test, the vehicle could be stopped "briskly" by use of one foot (340 to 360 pounds of force) and almost entirely if both feet were applied (500 pounds of force). Based on his calculations, he estimated that the maximum speed of plaintiff's vehicle at the time of impact was less than 23 miles per hour.* Defense counsel posited to Gambardella that an employee of defendant had testified that he saw plaintiff's vehicle "lurch forward." Defense counsel asked Gambardella what would cause plaintiff's vehicle to behave in such a way. Gambardella answered "[u]se of the engine, engine and transmission. That's the thing that would cause the vehicle to rapidly lunge forward. You have to restart the engine, put the vehicle in gear and step on the gas pedal.

---

* Gambardella testified that the coasting speed starting from the crest of the bridge coasting down to the Hoyt Avenue exit, without any braking, was well in excess of 40 miles per hour.

That will cause it to lurch forward. There is no other mechanism." Counsel asked whether Gambardella had an opinion with a reasonable degree of engineering certainty that plaintiff had restarted the vehicle. Gambardella responded: "Assuming what you asked me to assume, that the vehicle lurches forward, takes off, the only thing that can cause that vehicle to quote unquote take off and accelerate briskly is the engine."

Counsel asked Gambardella if he had an opinion with a reasonable degree of certainty as to how the accident had occurred. Gambardella responded: "We have an engine restart followed by pedal confusion . . . The plaintiff is stepping on the wrong pedal." However, he could not specify the speed of plaintiff's vehicle at the time plaintiff allegedly turned the engine on and depressed the accelerator instead of the brake. Gambardella conceded that he performed his tests on the bridge in a 2006 pickup and not in a 1994 Ford Explorer, the vehicle driven by plaintiff. He also conceded that the pickup was not being pushed at the time the tests were performed and that the pickup was in fact driven to the point where the hill crested. At no time during the test was the power steering on the truck disabled. Gambardella conceded that the exemplar vehicle had not overheated, as had plaintiff's vehicle. Gambardella had no data on the tire inflation or the weight of plaintiff's vehicle, but maintained that his calculations were nonetheless correct.

It is beyond dispute that defendant failed to comply with CPLR 3101 (d) (1) (i), which provides that "[u]pon request, each party shall identify each person whom the party expects to call as an expert witness at trial." Where a party retains an expert an insufficient period of time before the commencement of trial to give sufficient notice—here, defendant gave notice of Gambardella *in the middle of trial, after plaintiff had rested*—he or she must show "good cause" for the late disclosure.

In my opinion, defendant failed to show "good cause" for the belated disclosure (*see Germe v City of New York*, 211 AD2d 480 [1995]; *Hudson v Manhattan & Bronx Surface Tr. Operating Auth.*, 188 AD2d 355 [1992]). Defendant's purported excuse for the late disclosure—that counsel had recently been engaged, and that he thought the testimony would be "helpful" for the jury—was entirely insufficient.

More problematic, the belated disclosure was highly prejudicial to plaintiff on causation, the ultimate issue of the case. Plaintiff had no opportunity to effectively prepare for Gambardella's cross-examination, or to rebut the testimony by engaging his own expert. This was classic "trial by ambush." As indicated, Gambardella's testimony was flawed and his conclu-

sions suspect. There were considerable discrepancies in the conditions under which Gambardella performed his tests on the "exemplar" vehicle and the actual conditions at the time of the accident, discrepancies the import of which were not known because plaintiff had no opportunity to sufficiently prepare for Gambardella's testimony or to refute it. If apprised of Gambardella's testimony sufficiently in advance of trial, plaintiff would have been aware of Gambardella's conclusions—including his speculative one that plaintiff had suffered from "pedal confusion"—and could have hired his own expert to undermine the conclusions of Gambardella's testing. Instead, the jury heard extensive, highly technical testimony, the conclusion of which—based on speculative hypotheticals—was that plaintiff had caused his accident by restarting his vehicle and mistakenly stepping on the accelerator. This version of the facts was highly dubious, particularly in light of the undisputed testimony that plaintiff's vehicle picked up speed after the roadway crested and as it approached the Hoyt Avenue exit, where the road declined precipitously. Plaintiff attributed this "lurch" to the effects of gravity, and Georges' testimony regarding the accident is not inconsistent. Georges speculated that plaintiff had restarted his vehicle as he approached the exit, but Georges also testified that plaintiff "wiggled," consistent with having difficulty with the manual steering, and also testified that when he reached plaintiff shortly thereafter, the vehicle was in the "off" position. In sum, the expert's testimony gave imprimatur to a dubious rendition of the facts and no doubt was determinative of the case.

The defense waited until after the close of plaintiff's case to apprise the court of its intention to call Gambardella to the stand. Although plaintiff's counsel was given an opportunity to voir dire the expert, his examination was rushed and repeatedly objected to by defense counsel, and the court was certain to remind plaintiff's counsel that the jury was waiting. This brief questioning could not, in any event, overcome the overwhelmingly prejudicial effect of this last-minute expert testimony on causation, the dispositive factor of the case.

The jury returned a verdict in defendant's favor based on its finding that defendant was not negligent. To say that the belated expert disclosure did not prejudice plaintiff's case is to ignore reality and to endorse the gamesmanship engaged in by defense counsel. The trial court should have granted plaintiff's motion to preclude the testimony. At a minimum, the court should have offered plaintiff an adjournment and directed defendant to bear the cost of any rebuttal witness, as in *St. Hilaire v White* (305 AD2d 209 [2003]).