[53 NYS3d 61]

Sofia Fasolas, Respondent-Appellant, v Bobcat of New York, Inc., et al., Defendants, Bobcat of Long Island, Inc., et al., Appellants-Respondents, and Port Jefferson Rental Center, Inc., Doing Business as Taylor Rental Center, Respondent-Appellant.

Second Department, April 12, 2017

### APPEARANCES OF COUNSEL

*Haworth Coleman & Gerstman, LLC*, New York City (*Nora Coleman* of counsel), for appellants-respondents.

*Gary B. Pillersdorf & Associates, P.C.*, New York City (*Andrew H. Pillersdorf* of counsel), for plaintiff-respondent-appellant.

*Keller, O'Reilly & Watson, P.C.*, Woodbury (*Scott Watson, Jean M. Post* and *Denine C. Pagano* of counsel), for defendant-respondent-appellant.

### OPINION OF THE COURT

LEVENTHAL, J.

Twenty-eight-year-old Elias Fasolas (hereinafter the decedent) was operating a Bobcat S175 skid-steer loader with a bucket attachment when a nine-foot-tall tree entered the open operator cab, crushing him against the rear and ceiling of the

cab and killing him. The decedent had rented the loader from Port Jefferson Rental Center, Inc., doing business as Taylor Rental Center (hereinafter Taylor). Bobcat Company had manufactured the loader, and Bobcat of Long Island, Inc. (hereinafter together the Bobcat defendants), had sold it to Taylor. In this action commenced by the plaintiff, as administrator of the decedent's estate, against, among others, the Bobcat defendants and Taylor, the plaintiff alleged, inter alia, that the loader was defective because it did not incorporate a "special applications kit" as a standard safety feature instead of as an optional safety feature. The special applications kit restricted material from entering the cab opening and consisted of top and rear windows along with a half-inch-thick front door, made of Lexan, a polyplastic. Additionally, the plaintiff alleged that the loader was defective because it was rented without adequate warnings and training for its safe use.

The Bobcat defendants argued that, based on *Scarangella v Thomas Built Buses* (93 NY2d 655 [1999]), they could not be held liable for failing to make the special applications kit standard. In *Scarangella*, the Court of Appeals set forth an exception to the principles governing the liability of a manufacturer or seller of an allegedly defective product where the buyer purchases the product without an optional safety device. The *Scarangella* Court held that in certain circumstances it is the buyer, not the manufacturer or seller, who is in the superior position to conduct a risk-utility assessment of the product without the optional safety device, thereby precluding a determination that the manufacturer or seller was liable for a design defect. In the case at bar, the Supreme Court denied the Bobcat defendants' request for a jury charge regarding the *Scarangella* exception. The jury determined that the loader was defectively designed for use in the rental market when placed in the rental market by the Bobcat defendants and Taylor, and that the defect was a substantial factor in causing the decedent's death. The jury also found that Taylor's warnings and instructions to the deceased were inadequate and that this was a substantial factor in causing his death.

On these appeals and cross appeals, we are primarily asked to determine whether the manufacturer and seller of a product that is allegedly defective because of the absence of an optional safety device can invoke the *Scarangella* exception to liability where the product was sold to a buyer which, in turn, rented the product to the ultimate consumer. We hold that the *Scar-*

*angella* exception is not applicable where, as here, the product is sold to a rental company.

The plaintiff commenced this action against, among others, the Bobcat defendants and Taylor to recover damages for, inter alia, negligence and wrongful death based upon a design defect. The plaintiff's primary theory of liability was that the loader was defectively designed because it did not incorporate a front door as a standard safety feature instead of an optional one. The plaintiff also alleged that the loader was defective because it was rented without adequate warnings and training for its safe use.

At trial, the plaintiff's expert testified that every loader sold to a rental outlet to be rented to the public should have been equipped with a special applications kit because of the minimal costs of including such protection, and the known danger of objects penetrating the cab. In his opinion, placing the machine in the rental market without a front protection door was a design defect. Also, he asserted that there was no evidence to indicate that the decedent misused the loader. The plaintiff's expert additionally testified that Taylor should have trained renters in the use of the loader, and that the safety manuals and operating instructions that came with the loader did not warn against using it for knocking down trees.

In comparison, another witness, who was the former product safety manager of the Bobcat Company, testified that the loader with a bucket attachment could be safely used without the special applications kit, which kit included the Lexan door. According to that witness, the purpose of the bucket attachment was to dig, carry, and dump loose materials, and operators were instructed to carry such loads low to the ground. In contrast, a loader equipped with certain other types of attachments, like a brush saw or a hydraulic breaker, would require the installation of the special applications kit due to the risk of objects coming into the cab when such attachments were used. That witness also testified that there were benefits to not having the special applications kit installed, including that the open front made it easier to get in and out of the cab, and improved visibility. His testimony was to the effect that the decedent misused the loader by attempting to knock down the tree that crushed him.

At the close of the plaintiff's case, the Bobcat defendants moved pursuant to CPLR 4401 for judgment as a matter of law dismissing the complaint insofar as asserted against them,

arguing, inter alia, that based on *Scarangella*, they could not be held liable for failing to make the special applications kit standard. Taylor also moved pursuant to CPLR 4401 for judgment as a matter of law dismissing the complaint insofar as asserted against it. The Supreme Court reserved decision. Subsequently, the court denied the Bobcat defendants' request for a jury charge regarding the *Scarangella* exception. The court determined that the jury charge would be based on PJI 2:120, the standard charge for an action alleging strict products liability. After deliberations, the jury found that the loader was defectively designed for use in the rental market when placed in that market by the Bobcat defendants and Taylor, and that the defect was a substantial factor in causing the decedent's death. The jury further determined that Taylor rented the loader without adequate warnings and training and that this was also a substantial factor in causing the decedent's death. The jury attributed 25% of the liability to Bobcat Company, 25% to Bobcat of Long Island, Inc., and 50% to Taylor. The jury awarded the plaintiff damages in the sum of $1 million for conscious pain and suffering, but it did not award any pecuniary damages.

In an order entered April 8, 2013, the Supreme Court denied the separate motions of the Bobcat defendants and Taylor pursuant to CPLR 4401 for judgment as a matter of law and pursuant to CPLR 4404 (a) to set aside the verdict in favor of the plaintiff and against them on the issue of liability or, in the alternative, for a new trial on the issue of liability or, in the alternative, to set aside, as excessive, the verdict on the issue of damages. A judgment, upon the order and the jury verdict, in favor of the plaintiff in the principal sum of $1 million was entered on April 22, 2013.

We begin by considering the principles applicable to actions seeking to recover damages based upon strict products liability. Generally, in an action alleging strict products liability, "the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 106 [1983] [internal quotation marks omitted]). A claim of strict products liability can assert either (1) a manufacturing defect, (2) a design defect, or (3) a failure to provide adequate warnings regarding the use of a product (*see Doomes v Best Tr. Corp.*, 17 NY3d 594, 608 [2011]; *Voss v Black & Decker Mfg. Co.*, 59 NY2d at 106-107; *Pierre-Louis v DeLonghi Am., Inc.*, 66 AD3d 859 [2009]).

To establish a prima facie case in an action alleging strict products liability based on a design defect against a manufacturer, a plaintiff must show that the manufacturer "breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d at 107). In determining whether a plaintiff has made this showing, certain risk-utility factors must be considered (*see Scarangella v Thomas Built Buses*, 93 NY2d at 659).

The risk-utility factors that must be considered are: (1) the product's utility to the public as a whole; (2) its utility to the individual user; (3) the likelihood that the product will cause injury; (4) the availability of a safer design; (5) the possibility of designing and manufacturing the product so that it is safer; (6) the degree of awareness of the potential danger that can be attributed to the injured user; and (7) the manufacturer's ability to spread the cost of safety-related design changes (*see Denny v Ford Motor Co.*, 87 NY2d 248, 257 [1995]). These factors are "rooted in a recognition that there are both risks and benefits associated with many products and that there are instances in which a product's inherent dangers cannot be eliminated without simultaneously compromising or completely nullifying its benefits" (*id.* at 257).

Here, the plaintiff alleged that the loader was defectively designed because it was sold without the special applications kit, which would have included a Lexan front door. In *Scarangella v Thomas Built Buses* (93 NY2d 655 [1999]), the Court of Appeals addressed the elements that a defendant must establish to preclude its liability for a defective design where an optional safety device was available, but not included with the subject product. The plaintiff in *Scarangella,* a school bus driver, was injured when a school bus struck her while being operated in reverse in a bus parking yard. The distributor that sold the bus to the plaintiff's employer had offered a back-up safety alarm as an optional feature, and the plaintiff alleged that such an alarm would have alerted her to the fact that the bus was being operated in reverse. The plaintiff's employer was aware that the alarm was available but decided not to purchase it because of the loud, screaming signal that the alarm would emit in the residential neighborhood where the bus parking yard was located.

The Court of Appeals determined that a departure from the rationale for imposing strict liability against the bus seller was

warranted because the plaintiff's employer was a "highly knowledgeable consumer," the risk of harm was not substantial because the buses were only operated in reverse in the parking yard, and the plaintiff's employer was in the best position to assess the dangers of not having the alarm (*id.* at 661). The Court held that a product is not defective and a manufacturer or seller is not liable as a matter of law if it establishes that (1) the buyer was thoroughly knowledgeable about the product and its use and was aware that the safety feature was available; (2) there exist normal circumstances of use in which the product is not unreasonably dangerous without the optional feature; and (3) the buyer was in a position to balance the benefits and risks of not having the optional safety device "in the specifically contemplated circumstances of *the buyer's* use of the product" (*id.; see Passante v Agway Consumer Prods., Inc.*, 12 NY3d 372 [2009] [reinstating a defective design cause of action against the manufacturer of "Dok-Lok" device where the product was used by the buyer's employee, without an optional warning system, because the manufacturer did not eliminate all triable issues of fact as to whether the product was unreasonably dangerous without the optional safety device pursuant to *Scarangella*]; *Campbell v International Truck & Engine Corp.*, 32 AD3d 1184 [2006]; *Bova v Caterpillar, Inc.*, 305 AD2d 624 [2003]). Where all three prongs are satisfied, the "buyer," not the manufacturer or seller, is in a better position to assess the safety of the product without the optional safety feature, and a court should not submit a defective design claim against a manufacturer or seller to the jury, as there is no justification for the accepted rationale imposing strict liability upon the manufacturer or seller (*Scarangella v Thomas Built Buses*, 93 NY2d at 661). If one or more of the three prongs is not satisfied, however, the manufacturer or seller is in a better position than the buyer to discover design defects and, therefore, liability can be imposed. Ultimately, the Court in *Scarangella* affirmed this Court's determination that the defendant seller had established its entitlement to a directed verdict.

This Court found the *Scarangella* exception applicable to relieve a manufacturer of liability in *Warlikowski v Burger King Corp.* (9 AD3d 360 [2004]). In that case the plaintiff, a Burger King employee, was burned when he slipped and fell while carrying an open container of hot shortening that had been drained from a fryer unit. The manufacturer of the fryer

unit sold it to the plaintiff's employer without an optional wheeled disposal unit for transporting hot shortening. The plaintiff commenced an action alleging that the fryer was defectively designed because it did not include the optional disposal unit. This Court held that the manufacturer established its entitlement to judgment as a matter of law dismissing the cause of action alleging design defect. Applying the three-factor test set forth in *Scarangella*, we determined that the manufacturer demonstrated that the plaintiff's employer was aware of and eschewed the use of the optional disposal unit, that the fryer was reasonably safe for the purpose for which it was designed without the use of the optional disposal unit, and that the plaintiff's employer was in the best position to weigh the benefits of utilizing the optional disposal unit.

Returning to the instant appeal, the Bobcat defendants argue that the Supreme Court should have granted their motion for judgment as a matter of law pursuant to CPLR 4401 and to set aside the verdict pursuant to CPLR 4404 (a) because the plaintiff could not establish a prima facie case of design defect against them. The Bobcat defendants assert that the *Scarangella* exception to the rule imposing strict liability on a manufacturer applies here and that they met the three-factor test of *Scarangella*, relieving them of any liability. They assert that there is no theory of products liability that contemplates a product being defective for one market, but not defective for another. Thus, they maintain that the *Scarangella* exception applies here even though the loader was introduced into a rental market. Taylor and the plaintiff argue that the court properly found that the *Scarangella* exception did not apply.

■ The circumstances of this case demonstrate that the Supreme Court properly determined that the *Scarangella* exception is inapplicable. When the loader was sold to Taylor, the Bobcat defendants knew that Taylor would rent it out to consumers for their personal use. In other words, the Bobcat defendants knew that Taylor would be renting the loader to persons over whom Taylor had no control, and who might lack any experience operating heavy equipment. This is in sharp contrast to *Scarangella*, where the individuals at risk from the absence of back-up alarm equipment were almost exclusively the buyer's employees, and it was readily inferable that these employees were fully aware of a bus driver's blind spot in backing up a bus and the resultant hazard, and could be expected to exercise special care whenever positioned in proximity to the

rear of any bus that was idling or moving in reverse in the yard. Where, as here, the buyer is purchasing the product for use not by its employees but by the general public, over whom the buyer will exercise no control once the product is rented, it would be inappropriate to apply an exception to liability that is premised on the buyer being in a superior position to make the risk-utility assessment.

The *Scarangella* exception is appropriately invoked where the buyer, mindful of the environment in which the product is to be used, is in a position to engage in rational and reasonable balancing of the risk against the reward of not purchasing the optional safety device, and can be assumed to be adequately motivated to do so. Here, however, the person making the purchasing decision on Taylor's behalf was not at risk of personal harm through use of the loader without the optional safety device, thus reducing the motivation to engage in a rational and reasonable risk-benefit analysis. Taylor could have been motivated by a desire to avoid tort liability to third parties placed at risk. Yet, in contrast to the immediate added cost of buying the optional safety device, the true cost of potential tort liability was uncertain and unknown at the time Taylor elected not to purchase the optional special applications kit. Under all the circumstances presented here, the Bobcat defendants could not have reasonably expected Taylor to be in a better position than itself to balance both the costs and benefits associated with inclusion of the optional safety device (*see generally* James A. Henderson, Jr. & Aaron D. Twerski, *Optional Safety Devices: Delegating Product Design Responsibility to the Market*, 45 Ariz State LJ 1399 [Winter 2013]).

Our determination that the *Scarangella* exception should not be applied to this case is supported by the fact that a manufacturer is generally under a nondelegable duty to design and produce a product that is not defective (*see Hoover v New Holland N. Am., Inc.*, 23 NY3d 41, 54 [2014]; *Robinson v Reed-Prentice Div. of Package Mach. Co.*, 49 NY2d 471, 479 [1980]). The Bobcat defendants have failed to show that the *Scarangella* exception, which is a departure from this nondelegable duty, should apply under these circumstances.

■ We turn, briefly, to other issues raised on the appeals and cross appeals. The Bobcat defendants and Taylor argue that the Supreme Court erred in refusing to set aside the award in the sum of $1 million for pain and suffering as excessive. However, the award for pain and suffering did not materially

deviate from what would be reasonable under the circumstances and, therefore, that award should not be reduced (*see* CPLR 5501 [a]). According to the plaintiff's medical expert, the trauma tore the inside wall of the decedent's abdomen, lacerated his liver, and fractured his sternum and multiple ribs. That expert opined that the decedent suffered conscious pain and suffering for at least five minutes. The decedent experienced "excruciating pain" as well as terror, since he knew what was happening to him but was powerless to stop it.

Taylor additionally challenges the jury's determinations that its warnings and instructions to the decedent were inadequate and that this was a substantial factor in causing the decedent's death. "A motion pursuant to CPLR 4401 or 4404 for judgment as a matter of law may be granted only 'where the trial court finds that, upon the evidence presented, there is no rational process by which the fact trier could base a finding in favor of the nonmoving party'" (*Caliendo v Ellington*, 104 AD3d 635, 636 [2013], quoting *Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]). "In considering the motion for judgment as a matter of law, the trial court must afford the party opposing the motion every inference which may properly be drawn from the facts presented, and the facts must be considered in a light most favorable to the nonmovant" (*Szczerbiak v Pilat*, 90 NY2d at 556). Moreover, "a jury verdict in favor of a plaintiff should not be set aside as contrary to the weight of the evidence unless the evidence preponderates so heavily in the defendant's favor that the verdict could not have been reached on any fair interpretation of the evidence" (*Caliendo v Ellington*, 104 AD3d at 636; *see Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]; *Nicastro v Park*, 113 AD2d 129, 134 [1985]). "'It is for the jury to make determinations as to the credibility of the witnesses, and great deference in this regard is accorded to the jury, which had the opportunity to see and hear the witnesses'" (*Jean-Louis v City of New York*, 86 AD3d 628, 629 [2011], quoting *Exarhouleas v Green 317 Madison, LLC*, 46 AD3d 854, 855 [2007]).

■ Applying these standards, a rational jury could have found that Taylor's warnings and instructions to the decedent were inadequate and that this was a substantial factor in causing the decedent's death. Furthermore, the jury verdict in this regard was based on a fair interpretation of the evidence. The plaintiff's expert testified that Taylor should have trained renters in the use of the loader, and should have observed renters

operating it. However, there was testimony that a Taylor employee gave a demonstration of the loader's use to the decedent, lasting 10 minutes, and then placed the loader onto a trailer. This evidence suggests that the decedent may not have operated the loader for the first time until he reached his home. Additionally, Taylor kept certain safety manuals in a file cabinet located at its office instead of with the loader.

Contrary to Taylor's further contention, Taylor was not entitled to common-law indemnification, as it failed to establish that it committed no wrongdoing with respect to the cause of the decedent's accident (*see generally Esteva v Nash*, 55 AD3d 474, 475 [2008]; *Tiffany at Westbury Condominium v Marelli Dev. Corp.*, 40 AD3d 1073, 1077 [2007]).

Contrary to the plaintiff's contention, under the circumstances of this case, the Supreme Court did not err in declining to charge the jury regarding the alleged pecuniary loss sustained by the distributees of the decedent's estate.

The parties' remaining contentions are without merit.

Accordingly, the appeal and cross appeal from the order are dismissed, as the right of direct appeal therefrom terminated with the entry of judgment in the action (*see Matter of Aho*, 39 NY2d 241 [1976]), and the judgment is affirmed insofar as appealed and cross-appealed from.

ENG, P.J., RIVERA and BALKIN, JJ., concur.

Ordered that the appeal and cross appeal from the order are dismissed, as the right of direct appeal therefrom terminated with the entry of judgment in the action (*see Matter of Aho*, 39 NY2d 241 [1976]); and it is further,

Ordered that the judgment is affirmed insofar as appealed and cross-appealed from; and it is further,

Ordered that one bill of costs is awarded to the plaintiff, payable by the defendants appearing separately and filing separate briefs.